**UNITED STATES, Appellee,**

v.

**William E. McCARTHY, Jr.,
Defendant, Appellant.**

**No. 91–1617.**

United States Court of Appeals,
First Circuit.

Heard March 5, 1992.
Decided April 15, 1992.

Reading facility, even though Davies Can's eastern Pennsylvania plant had yet to come on line.

James B. Krasnoo, for defendant, appellant.

Jeffrey A. Locke, Asst. U.S. Atty., with whom Geoffrey E. Hobart, Asst. U.S. Atty., and Wayne A. Budd, U.S. Atty., were on brief for appellee.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and WEIS,* Circuit Judge.

BOWNES, Senior Circuit Judge.

This is a criminal appeal. After a jury trial Defendant William E. McCarthy, Jr., was convicted on two counts, conspiracy to possess with intent to distribute five kilograms of cocaine and aiding and abetting possession with intent to distribute more than 500 grams of cocaine. Defendant was sentenced to 300 months imprisonment, 120 months supervised release, and a special assessment of $100. Defendant appeals his conviction and sentence. We affirm.

* Of the Third Circuit, sitting by designation.

Background

The case arose out of a FBI drug investigation. Special Agent Gary Brotan, posing as a cocaine trafficker, engaged in a series of conversations with James D'Avella between August 8th and 17th, 1989, relating to the purchase of cocaine. D'Avella was acting as a cocaine broker—that is, as a representative of others in the sale or purchase of cocaine. Agent Brotan sought to buy five kilograms of cocaine from D'Avella.

During the initial conversations D'Avella stated that he had access to five kilograms but that he would not release them all at once. D'Avella instead offered to arrange a sale of two kilograms. Agent Brotan refused the deal, stating that the buyer he represented did not wish to risk exposure for such a small amount. On August 16th D'Avella contacted Agent Brotan and set up a meeting at the Celebrity Lounge in Chelsea, Massachusetts to meet Agent Brotan and his buyer.

Agent Brotan went to the Celebrity Lounge with Special Agent Thomas Daly. Daly was to pose as a New York drug trafficker who was using Agent Brotan to find a new cocaine supplier. Agent Daly remained outside in the car while Agent Brotan went inside to meet D'Avella. At the meeting D'Avella stated that his supplier was coming from New Hampshire with five kilograms of cocaine. During the meeting D'Avella called an associate and handed the phone to Agent Brotan, identifying the associate as "Billy." Agent Brotan later identified the associate as defendant William McCarthy. McCarthy set up a meeting the next day at the Celebrity Lounge.

The next morning, August 17, 1989, Agents Brotan and Daly returned to the lounge and met with D'Avella and McCarthy. McCarthy stated he did not have the cocaine with him. He also said that he did not want to complete the transaction for five kilograms at the lounge because it was a "hot area" for law enforcement. The

four agreed to meet at the parking lot at the Northgate Shopping Center in Revere, Massachusetts.

Upon the agents' arrival at the Northgate Shopping Center, McCarthy and D'Avella met them. McCarthy informed the agents that he did not have the cocaine and that the transaction would occur in the parking lot at the Woburn Mall, and that one of his associates would bring the cocaine in the back of a catering truck.

At the Woburn Mall McCarthy attempted to call his courier. After he was unable to do so he invited Agent Daly to go inside the mall to a restaurant while Agent Brotan and D'Avella waited outside. While in the restaurant McCarthy and Agent Daly discussed the drug trade including general plans for future deals. They then returned to the parking lot.

Shortly after McCarthy and Agent Daly returned to the parking lot two cars arrived, parking near where McCarthy, Agent Daly, and Agent Brotan were standing. The first was a 1980 Cadillac driven by Russell Cortese, while the second was a black Nissan driven by Edward Travalini. Upon seeing Cortese, McCarthy commented that he had not arrived in his truck. Agent Daly and Travalini entered Daly's car. Travalini then opened an athletic bag containing a kilogram of cocaine. Agent Daly asked where the other four kilograms were. Travalini replied that they wouldn't be available until the next day.

Immediately after the conversation other FBI agents arrested McCarthy, D'Avella, Cortese, and Travalini. Subsequent to his arrest, Travalini signed a form consenting to the taping of a conversation between himself and Debra Medina. During the conversation Travalini explained that he had escaped arrest and had the money from the deal. He asked what he should do with the money. Medina replied that Travalini should bring the money to her husband Frankie at work. Agent Brotan and Travalini brought the money to Frankie's place of employment. James Colarusso, a co-worker of Travalini, came out to collect the money. At that point Colarusso and Frankie Medina were arrested. Debra Medina was also arrested.

After a jury trial, on June 11, 1990, McCarthy was convicted on two counts: (1) conspiracy to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846; and (2) possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The court set sentencing for September 10, 1990. Defendant failed to appear at the sentencing hearing. The court continued the sentencing hearing until the next day. When defendant again failed to appear, the court revoked defendant's Order of Release and issued a warrant for his arrest. Federal agents subsequently arrested him on March 29, 1991.

At the sentencing hearing held April 3, 1991, the court determined the applicable base offense level to be 32, using five kilograms as the amount included in the offense. U.S.S.G. § 2D1.1(c)(6) & 2D1.4(a). Because of defendant's leadership role the court adjusted the base offense level upwards four levels. U.S.S.G. § 3B1.1. Finally, because defendant fled prior to sentencing the court adjusted the offense level upwards two levels as an obstruction of justice for a total offense level of 38. U.S.S.G. § 3C1.1. Finding a criminal history category of III, the court sentenced McCarthy to 300 months imprisonment, 120 months of supervised release, and a special assessment of $100.

## Analysis

Defendant raises seven issues on appeal: [1] the court improperly excused two jurors for cause; [2] the court improperly admitted into evidence conversations between others not shown to be part of the conspiracy of which defendant was a member; [3] the court admitted into evidence a conversation without the proper foundation; [4] the court improperly refused to submit to the jury the markings [1] on the package of

---

1. The court, understandably, did not want to send the package of cocaine into the jury room.

For reasons that we do not understand, defen-

cocaine admitted into evidence; [5] the court improperly determined defendant's base offense level; [6] the court improperly adjusted defendant's offense level upwards for his role in the offense; [7] the court impermissibly adjusted defendant's offense level upwards for obstruction of justice.

### A. *Excusing Jurors for Cause*

█ Defendant claims that the trial court improperly excused two jurors for cause. One juror was dismissed after indicating that he favored the legalization of drugs. The other juror was excused after it was discovered that the prosecutor in the case had previously prosecuted the juror's brother. By dismissing the two jurors, defendant contends, the district court prejudiced his right to a fair trial.

During voir dire the court asked, "I want to ask if in light of the general nature of the case ... you know of any reason you could not serve as a completely fair and impartial juror in this case." In response to the court's question Ronald Perry approached the bench and explained that he favored the legalization of drugs. Perry also explained that in the past year he had "unpleasant experiences with the court" and that he was "bitter about having to be here."

At that point the court attempted to excuse the juror for cause. Defendant's counsel objected, stating that Perry was merely stating a philosophical point of view. The court then asked Perry:

> What I want to ask you is, do you think you would be able to put those personal views aside, follow the instructions of the Court as to what the questions are that must be decided on the evidence in this case and decide those questions fairly and impartially on the evidence without being influenced by the views that you've expressed to me?

Perry responded: "No, I don't. Like I said, I'm for a total legalization of all drugs and I don't feel that they should be prosecuting these people." The court then excused Perry for cause.

dant wanted the jury to have the packaging

Later during voir dire the court asked whether the jurors had any experience with the criminal justice system. In response juror Charles Trippe explained that his brother was a trial attorney who had tried several criminal cases. The prosecutor then explained at sidebar that he had tried Trippe's brother for a violation of the wiretapping statute. Defendant argued that there was no present showing of bias because the juror was unaware of the connection between his brother and the prosecutor. He further contended that no bias would occur if Trippe followed jury instructions not to discuss the case with anyone. The court excused the juror for cause.

█ District courts have broad discretion in the conducting of voir dire. *Real v. Hogan*, 828 F.2d 58, 62 (1st Cir.1987). We have stated, " 'There are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empanelling of a jury.' " *United States v. Gullion*, 575 F.2d 26, 29 (1st Cir.1978) (quoting *United States v. Ploof*, 464 F.2d 116, 118 n. 4 (2d Cir.1972)). We find no such "clear abuse" here.

### B. *Admission of Co–Conspirator Statements*

█ Defendant claims that the court improperly admitted several statements of co-conspirators including tape-recorded conversations between Agent Brotan and D'Avella. He argues that the statements were not shown to be relevant and that the defendant was not shown to be a member of a conspiracy. Defendant contends that to the extent that the court did find that he was a member of a conspiracy, it improperly relied on evidence adduced in the prior trials of his co-conspirators.

█ Under Federal Rule of Evidence 801(d)(2)(E) a statement is not hearsay if offered against a party and is "a statement by a coconspirator of [that party] during the course and in furtherance of the conspiracy." Such a statement will be admit-

material with the markings on it.

ted if the court finds that "it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy." *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir.1977); *see also United States v. Carroll*, 860 F.2d 500, 506 (1st Cir.1988); *United States v. Cresta*, 825 F.2d 538, 551 (1st Cir.1987), *cert. denied*, 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988); *United States v. Ciampaglia*, 628 F.2d 632, 637 (1st Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 221 (1980). We review for clear error. *Cresta*, 825 F.2d at 551.

In *Ciampaglia*, we outlined the procedure that a trial court should use if it conditionally admits the out-of-court statement of an alleged co-conspirator:

"[T]he court should inform the parties on the record out the hearing of the jury that (a) the prosecution will be required to prove by a preponderance of the evidence that a conspiracy existed, that the declarant and defendant were members of it at the time that the declaration was made, and that the declaration was in furtherance of the conspiracy[;] (b) that at the close of all evidence the court will make a final *Petrozziello* determination for the record, out of the hearing of the jury; and, (c) that if the determination is against admitting the declaration, the court will give a cautionary instruction to the jury, or, upon an appropriate motion declaration declare a mistrial...."

628 F.2d at 638.

In this case the court properly followed the procedures outlined in *Ciampaglia*. When the prosecutor attempted to admit tape recordings of conversations between Agent Brotan and D'Avella, defendant objected on relevancy grounds claiming that the conversations were hearsay and did not fall with the Rule 801(d)(2)(E) exception. The court, at a sidebar, conditionally admitted the testimony stating: "I will of course be following the First Circuit directions with respect to *Petrozziello* hearings and will not be making a final ruling on admissibility of co-conspirators until after all the

evidence is closed and I've held the *Petrozziello* hearing." The court chose to conditionally admit the evidence because, based on previous trials of alleged co-conspirators, it thought it likely that the prosecutor would prove by a preponderance of the evidence that there was a conspiracy of which the defendant was a part and that the statements were in furtherance of the conspiracy.

At the close of evidence the court held a full *Petrozziello* hearing, reviewing only evidence adduced at defendant's trial. Defendant argued that there had been no evidence that he had been a member of the conspiracy when the early conversations between D'Avella and Agent Brotan took place. The court found, after examining all the evidence, that the government had met its burden of showing that defendant had been a member of a conspiracy from the time of the first conversation between D'Avella and Agent Brotan to the time of defendant's arrest. The court relied on, among other evidence, a telephone log listing several sets of phone calls between D'Avella's number and that of McCarthy's from the time of the first conversation till the time of defendant's arrest. We find no clear error.

### C. *Admission of Telephone Conversation*

■ Defendant claims that the trial court improperly admitted testimony of the contents of an unrecorded telephone conversation allegedly between the defendant and Agent Brotan that occurred at the Celebrity Lounge on August 16, 1990. He contends the court failed to consider the proper factors in determining whether there was adequate identification of the individual who had conversed with Agent Brotan so that the conversation would be admissible as that of the defendant's.

■ We review a trial court's rulings on admissibility of evidence only for abuse of discretion. *United States v. Abreu*, 952 F.2d 1458, 1467 (1st Cir.1992); *United States v. Newton*, 891 F.2d 944, 946 (1st Cir.1989). We find no abuse of discretion here. The defendant incorrectly argues

that the conversation would be admissible only if the unidentified voice was the defendant's. This conversation, however, was admissible as an act in furtherance of the conspiracy. Agent Brotan and the unidentified speaker "Billy" discussed details regarding the proposed drug deal. It was one more act in furtherance of the conspiracy of which the defendant was a member. It was unnecessary for the prosecution to produce evidence that the defendant was the unidentified speaker in the telephone conversation with Agent Brotan.

### D. Refusal to Send to Jury Cocaine Package Markings

■ Defendant argues that the trial court improperly refused to send the markings on the packaging of the cocaine exhibit to the jury. Alternatively, defendant contends that the court improperly failed to instruct that the markings were in evidence and could be considered by the jury.

" 'Whether ... evidentiary exhibits properly admitted should or should not accompany the jury to the jury room is a discretionary matter for the trial court.' " *United States v. Rawwad*, 807 F.2d 294, 297 (1st Cir.1986) (quoting *United States v. Stone*, 472 F.2d 909, 914 (5th Cir 1973), *cert. denied*, 449 U.S. 1020, 101 S.Ct. 586, 66 L.Ed.2d 482 (1980)), *cert. denied*, 482 U.S. 909, 107 S.Ct. 2490, 96 L.Ed.2d 382 (1987). It was well within the court's discretion to not send the packaging to the jury room. Moreover, the court informed the jurors that it would send the packaging to them if they requested it. The jury did not request it.

### E. Amount in Offense

■ Defendant argues that the court improperly determined the object of the conspiracy as five kilograms and thereby used 32 as the base offense level under U.S.S.G. § 2D1.1 and 2D1.4. He contends that there was no evidence, aside from assertions made by conspirators to the undercover agents, that the conspiracy could provide

five kilograms. He points to Application Note One of § 2D1.4 of the Sentencing Guidelines which states that "where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing." U.S.S.G. § 2D1.4, comment. (n. 1). Defendant contends that the proper base offense level is 26, the level for one kilogram of cocaine.

■ We review a trial court's determination of the amount included in the offense for sentencing purposes for clear error. *United States v. Cetina–Gomez*, 951 F.2d 432, 434 (1st Cir.1991). " 'And where more than one reasonable inference may be drawn from undisputed facts, the court's choice from among supportable alternatives cannot be clearly erroneous.' " *United States v. Rodriguez Cortes*, 949 F.2d 532, 547 (1st Cir.1991) (citation omitted).

The jury found beyond a reasonable doubt that the defendant conspired to possess with intent to distribute five kilograms of cocaine. It was not clearly erroneous for the court to find, based on a preponderance of the evidence, that the negotiated deal was for five kilograms.

### F. Role in Offense

■ Defendant challenges the trial court's four-level upward adjustment of his offense level under § 3B1.1 of the Sentencing Guidelines for his leadership role in the offense.[2] He argues that the court improperly relied on information adduced at the trials of co-conspirators in order to find him the leader of five or more people. By doing so, defendant contends that the court denied him effective assistance of counsel. Further, he argues that he did not have control over the requisite five people as required by § 3B1.1 of the Guidelines.

■ We review the court's determination of role in the offense only for clear

---

**2.** U.S.S.G. § 3B1.1(a) states:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

error. *United States v. Osorio*, 929 F.2d 753, 764 (1st Cir.1991). The district court may rely on evidence adduced at trials of co-conspirators for sentencing purposes as long as the defendant receives notice prior to its use and has the opportunity to challenge its reliability. *United States v. Berzon*, 941 F.2d 8, 19 (1st Cir.1991); *see also United States v. Romano*, 825 F.2d 725, 728 (2d Cir.1987).

In this case defendant challenges information contained in the pre-sentence report. He received notice through the pre-sentence report itself that the information was being used. We also observe that the original indictment named seven co-conspirators, thereby putting defendant on notice that he might be considered a leader of a conspiracy consisting of at least five members. The specific disputed information was also contained in a trial memorandum that defendant received prior to trial. We therefore find that the court properly relied on the information adduced from other trials. Nor was it clear error for the court to find that defendant was a leader or organizer of five or more people.

### G. *Obstruction of Justice*

■ Finally, defendant challenges the trial court's two-level upward adjustment of his offense level under § 3C1.1.[3] He argues that the district court incorrectly adjusted his offense level because he fled after his conviction but prior to his sentencing. He observes that in Application Note one of the 1989 version of the Sentencing Guidelines, the version applicable in this case, flight was not listed as conduct that might provide a basis for applying the adjustment.[4] U.S.S.G. § 3C1.1, comment. n. 1 (1989).[5] Subsequently, in the 1990 version flight was added as an example of conduct that constitutes obstruction of justice for purposes of the Sentencing Guidelines. U.S.S.G. § 3C1.1, comment. n. 3(e).[6] Defendant argues that because flight was not listed in the 1989 version of the Guidelines, he lacked notice that his flight would cause a two-level enhancement of his offense level.

Because this issue requires us to determine whether defendant's flight after conviction but prior to sentencing constituted obstruction of justice as a matter of law under the 1989 version of the Sentencing Guidelines, we review de novo. *United States v. Veilleux*, 949 F.2d 522, 525 (1st Cir.1991); *see also United States v. Stroud*, 893 F.2d 504, 507 (2d Cir.1990). Though this is an issue of first impression for this circuit, several other circuits have addressed it. They have uniformly held that flight after arrest constitutes an obstruction of justice. *See, e.g., United States v. Keats*, 937 F.2d 58, 67 (2d Cir.) (upheld adjustment for obstruction of justice when defendant attempted to flee prior to trial), *cert. denied*, —— U.S. ——, 112

3. U.S.S.G. § 3C1.1 as enacted in 1989, the applicable version for this appeal, states:

> If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.

4. At the sentencing hearing the trial court expressly stated that he was using the 1989 version of the Sentencing Guidelines, the version in force at the time of defendant's trial.

5. It states:

> The following conduct, *while not exclusive*, may provide a basis for applying this adjustment:
> (a) destroying or concealing material evidence, or attempting to do so;
> (b) directing or procuring another person to destroy or conceal material evidence, or attempting to do so;

> (c) testifying untruthfully or suborning untruthful testimony concerning a material fact, or producing or attempting to produce an altered, forged, or counterfeit document or record during a preliminary or grand jury proceeding, trial sentencing proceeding, or any other judicial proceeding;
> (d) threatening, intimidating or otherwise unlawfully attempting to influence a co-defendant, witness, or juror, directly or indirectly;
> (e) furnishing material falsehoods to a probation officer in the course of a presentence or other investigation of the court.

(Emphasis added).

6. U.S.S.G. § 3C1.1, comment. n. 3(e) states:
> The following is a non-exhaustive list of examples of the types of conduct to which this enhancement applies:
> (e) escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding. . . .

S.Ct. 399, 116 L.Ed.2d 348 (1991); *United States v. St. Julian,* 922 F.2d 563, 571 (10th Cir.1990) (upward adjustment for failure to appear at sentencing hearing); *United States v. Teta,* 918 F.2d 1329, 1335 (7th Cir.1990) (upward adjustment when defendant failed to appear at sentencing hearing); *United States v. Perry,* 908 F.2d 56, 59 (6th Cir.) (two-level upward adjustment when defendant jumped bond before sentencing and was not arrested for more than a year), *cert. denied,* —— U.S. ——, 111 S.Ct. 565, 112 L.Ed.2d 571 (1990).

In keeping with the holdings of the other circuits, we find that the district court correctly held that flight after arrest constituted an obstruction of justice under the 1989 version of the Guidelines. We find little merit in the contention that the defendant lacked notice that his flight would cause an adjustment under § 3C1.1. The guideline explicitly stated that if "a defendant willfully impeded ... the administration of justice" he would be subject to a two-level adjustment. Failing to appear at a sentencing hearing and disappearing for six months clearly impedes the administration of justice. *See Perry,* 908 F.2d at 59. Defendant was fully aware that he was delaying his sentencing by fleeing.

### Conclusion

We affirm the conviction and sentence. *Affirmed.*