August 18, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1959

UNITED STATES,

Appellee,

v.

RICHARD L. ROWE,

Defendant, Appellant.

ERRATA SHEET

The opinion of this Court issued on July 22, 1993, is
amended as follows:

On page 2, footnote 1, lines 4-5, replace "29 U.S.C.
1131;" with "29 U.S.C. 1023, 1024, and 1131;".

July 30, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1959

UNITED STATES,
Appellee,

v.

RICHARD L. ROWE,
Defendant, Appellant.

ERRATA SHEET

The opinion of this Court issued on July 22, 1993, is
amended as follows:

On page 4, line 7 from the bottom: strike "Fed. R. Civ. P.
52(a)."

On page 4, last line: change "q" in "quideline" to "g"

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1959

UNITED STATES,

Appellee,

v.

RICHARD L. ROWE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Circuit Judge,

Campbell, Senior Circuit Judge,

and Stahl, Circuit Judge.

Susan E. Silver with whom Jack F. St. Clair and Joseph, St. Clair

& Cava were on brief for appellant.

Victor A. Wild, Assistant United States Attorney, with whom A.

John Pappalardo was on brief for appellee.

July 22, 1993

BOUDIN, Circuit Judge. Pursuant to a plea agreement,

Richard Rowe pled guilty to numerous criminal charges

stemming from his role in a fraudulent health insurance

scheme whose victims were a number of small businesses and

their employees.1 Rowe developed and administered a multi-

employer health insurance plan which offered below-market

rates for coverage comparable to that provided by other

insurance companies, and which was falsely represented as

being a tax-exempt ERISA plan "approved" by the United States

Department of Labor. Rowe and others involved in the scheme

mismanaged the operation and converted plan assets and, as a

result, many subscribers to the plan were left with unpaid

medical bills.

Rowe was sentenced to an aggregate six-year term of

imprisonment, to three years of supervised release, and

ordered to pay up to $1,903,386 in restitution. He now

appeals, challenging the following sentencing calculations:

a two-level increase in his base offense level for victim

vulnerability, U.S.S.G. 3A1.1; a two-level increase for

obstruction of justice, U.S.S.G. 3C1.1; and a one-level

1Rowe pled guilty to all counts against him which
included conspiracy, 18 U.S.C. 371; mail fraud, 18 U.S.C.
1341; ERISA theft, 18 U.S.C. 664; ERISA false
statements, 18 U.S.C. 1027; failure to file certain ERISA
statements, 29 U.S.C. 1023, 1024, 1131; and ERISA
kickback, 18 U.S.C. 1954. ERISA is the acronym for the
Employment Retirement Income Security Act of 1974, 29 U.S.C.
1001 et seq.

-2-

upward departure for causing the loss of confidence in an

important institution, U.S.S.G. 2F1.1, application note

10(e). We set aside the enhancement for victim vulnerability

and otherwise affirm.

Victim Vulnerability. Section 3A1.1 of the Sentencing

Guidelines directs the sentencing court to increase a

defendant's base offense level by two levels:

If the defendant knew or should have known that a
victim of the offense was unusually vulnerable due
to age, physical or mental condition, or that a
victim was otherwise particularly susceptible to
the criminal conduct . . . .

The commentary to the guideline states that the adjustment

applies "where an unusually vulnerable victim is made a

target of criminal activity by the defendant." U.S.S.G.

3A1.1, application note 1. The commentary further explains

that an adjustment for victim vulnerability is warranted

where, for example, a defendant fraudulently markets an

ineffective cancer cure or targets a handicapped person for

robbery, but not where a fraud is aimed at the general public

and "one of the victims happened to be senile." Id.

The government made two arguments in the district court

in support of the enhancement. First, it said that small

businesses such as those solicited by Rowe are unable to

obtain affordable health insurance for their employees,

making them particularly susceptible to offers of low-cost

health insurance. Second, the government argued that

-3-

individual employees were rendered vulnerable once they

developed medical problems because they then faced the choice

of either continuing their payments to Rowe's plan, despite

its nonpayment or delayed payment of their medical bills, or

else possibly losing their health insurance. Rowe contends

that the district court erred in accepting these arguments as

a basis for imposing an enhancement under section 3A1.1. He

says that the district court should have required the

government to produce evidence that the employers and

employees were in fact unusually vulnerable instead of taking

the government's assertions at face value. We agree.

In our view, it may be fair to assume as a matter of

reasonable inference that a number of the small businesses to

whom the insurance was sold were motivated by need as well as

by the prospect of savings. It is even more likely that

those subscribers who were already ill when the plan faltered

would be inclined to remain longer with the plan for lack of

alternatives. The district court in sentencing matters is

not restricted to formal evidence, and the court's factual

inferences, as well as direct findings, are normally set

aside only if "clearly erroneous." See 9 Wright & Miller,

Federal Practice and Procedure 2573, at 689, 2587 (1971 &

1993 Supp.).

Nevertheless, we think as a matter of interpretation of

the guideline, cf. United States v. Sabatino, 943 F.2d 94,

-4-

102 (1st Cir. 1991), that the enhancement does not apply in

this case. In construing this guideline, the circuit courts

have been rather quick to reverse enhancements based on the

victims' class membership, without a showing of individual

circumstances; and, in addition, the case law has emphasized

the need for "unusual[]" vulnerability and "particular[]"

susceptibility. U.S.S.G. 3A1.1.2 In Wilson, the court

reversed the enhancement for one who fraudulently solicited

for "relief" funds in a town stricken by a tornado, saying:

[I]f we were to adopt the government's position,
virtually every defendant convicted of a crime
involving fraudulent solicitation would be subject
to an upward adjustment under 3A1.1. Those who
engage in this criminal activity usually target
their solicitations at those they think most likely
to respond to the requests for money. We do not
think, however, that the Sentencing Commission
intended on that account to impose an upward
adjustment on virtually all defendants convicted of
fraudulent solicitation.

913 F.2d at 138.

We think that even if we accept the government's

assumption that small businesses are often limited in their

sources for securing insurance, this does not itself show

that measure of "unusual" or "peculiar" vulnerability or

susceptibility of victims needed to invoke the guideline.

2See, e.g., Sabatino, 943 F.2d at 103; United States v.

Paige, 923 F.2d 112, 113-114 (8th Cir. 1991); United States

v. Creech, 913 F.2d 780, 781-82 (10th Cir. 1990); United

States v. Wilson, 913 F.2d 136, 138 (4th Cir. 1990). Compare

United States v. Pavao, 948 F.2d 74, 78 (1st Cir. 1991)

(enhancement upheld where district court heard evidence of
drug user's actual vulnerability to crime).

-5-

Apart from directing his offers to the group "most likely to

respond," Wilson, 913 F.2d at 138, there is nothing in the

record to suggest that Rowe focused special attention on

precariously placed victims--conduct evincing the "extra

measure of criminal depravity which 3A1.1 intends to more

severely punish." United States v. Moree, 897 F.2d 1329,

1335 (5th Cir. 1990).

We do not say that under the guideline special

vulnerability may never be derived from class membership; as

the commentary states, "market[ing] an ineffective cancer

cure" would qualify for enhancement. U.S.S.G. 3A1.1,

application note 1. But where there is only an ordinary

measure of increased likeliness to respond in the solicited

group, and no evidence that the defendant selected individual

victims based on special susceptibility, we think the

enhancement does not apply. It is hard to articulate a more

precise standard where so much turns on degree. The emerging

case law will pick out the pattern.

As for the individual employees who later developed

medical conditions, we agree with the government that it is

probably safe to assume that these individuals had more than

the usual incentive to continue paying their premiums. There

may well be among this group some who were especially

stricken and unusually vulnerable, just as there may have

been some small businesses truly desperate to obtain

-6-

insurance. Although individuals who became ill after the

insurance was sold were hardly a special target of Rowe's

initial solicitations, it may be that their subsequent

inability to switch plans contributed in some manner to his

profits.

But in this case the thrust of the wrongdoing with which

Rowe was charged was the initial fraudulent solicitations and

the mismanagement or looting of the plan's assets. The near

certainty that some of the subscribers would be more enmeshed

than others appears to have been a collateral aspect of the

wrongdoing. Indeed, the situation is rather close to the

case in which a fraud is aimed at the general public and some

of the victims are senile or otherwise unusually susceptible.

Yet in that instance the guideline commentary expressly

precludes an enhancement, U.S.S.G. 3A1.1, application note 1,

presumably because there is no special targeting of such

victims and the added impact is incidental. We think the

same result follows in this case.3

Obstruction of Justice. Rowe's guilty plea encompassed

related charges that were brought in Atlanta and Boston and

that were later consolidated. After Rowe's arrest in Boston

3At oral argument before this court, the government
implied that Rowe's company told individual subscribers with
medical problems that they had no choice, given their
existing conditions, other than to stay with its plan despite
late payment of their claims. However, no evidence to this
effect was presented to the district court.

-7-

on January 23, 1990, he was released on bond on the

condition, among others, that he appear for all judicial

proceedings as required. Two days later Rowe was arraigned

in the Atlanta case in the Northern District of Georgia.

Shortly thereafter Rowe fled the country, and a warrant

for his arrest was issued on April 13, 1990. Rowe was

arrested in Denmark by Danish authorities on June 16, 1990,

and returned the next month to Atlanta where he remained in

federal custody without bail. While Rowe was out of the

country, the district court in Georgia heard motions in the

case in Rowe's absence. Rowe's action in fleeing the country

resulted in a two-level enhancement for obstruction of

justice, U.S.S.G. 3C1.1, which Rowe now appeals.

The government argues that Rowe has waived any objection

to the enhancement for obstruction of justice because his

written objection to the enhancement as proposed in the

presentence report was not repeated at the sentencing

hearing. At the outset of the hearing, the district judge

asked Rowe's counsel whether he had any "additions or

corrections" to make to the presentence report, which

incorporated an enhancement for obstruction of justice.

Rowe's lawyer replied that the only correction concerned

Rowe's assets and liabilities, and the discussion then turned

to the defendant's assets and to other issues.

-8-

Notably, the government, when asked the same question,

said that it had no additions or corrections to make, even

though it had filed its own written objections to the

presentence report. When the district court then inquired

into one of those objections, the prosecutor told the judge

that he had "understood the Court to be asking whether there

were any additional matters the government wanted to submit

to the Court as opposed to argue to the Court." Rowe's

lawyer might have reached the same conclusion since the

matter of Rowe's assets was a newly-raised issue. We need

not pursue the matter because the enhancement was

appropriate.

Rowe argues that the obstruction enhancement does not

apply to flights from arrest that do not endanger others.

U.S.S.G. 3C1.1, application note 4(d), and 3C1.2. This

is a generally correct statement of the law but an erroneous

description of the reason for Rowe's enhancement. Rowe

received the enhancement for his failure to appear for

judicial proceedings. This was made clear in the presentence

report. The commentary to the obstruction guideline in

effect at the time of Rowe's sentencing provides for a two-

point increase for a defendant's "willfully failing to

appear, as ordered, for a judicial proceeding." U.S.S.G.

3C1.1, application note 3(e) (1990).

-9-

Although this commentary was not in effect when Rowe

fled to Denmark, no ex post facto problem is presented. The

1989 version of the guidelines were in effect when Rowe

disappeared in early 1990. The courts have uniformly held

that flight from judicial proceedings constitutes an

obstruction of justice under the 1989 version of the

Guidelines. United States v. Monroe, 990 F.2d 1370, 1375

(D.C. Cir. 1993) (canvassing cases); United States v.

McCarthy, 961 F.2d 972, 979-80 (1st Cir. 1992).

Rowe's only response to the actual basis for the

enhancement is that he was unaware of probation proceedings

to obtain his passport. It was during these proceedings that

authorities learned of Rowe's absence from the country. In

his response to the presentence report, Rowe explained that

he had already left for Denmark when the probation office

began its efforts to secure his passport. However, as Rowe's

counsel conceded at oral argument in this court, one of the

conditions of Rowe's release was that he turn over his

passport. The obvious purpose of the requirement was to

prevent Rowe from avoiding prosecution by leaving the

country. We find no error in the district court's decision

to enhance Rowe's sentence for obstruction of justice.

Loss of Confidence in an Important Institution. We also

affirm the district court's decision to depart upward one

level for loss of confidence in an important institution.

-10-

The commentary to the fraud guideline says that an upward

departure may be warranted if the amount of the loss involved

does not fully capture the harm or seriousness of the

conduct, and then gives several examples of when a departure

may be appropriate. U.S.S.G. 2F1.1, application note 10.

One of the examples is where "the offense caused a loss of

confidence in an important institution." Id., application

note 10(e).

In its presentence memorandum, the government cited

articles and congressional testimony describing the growing

threat to the health insurance industry, and in particular to

multi-employer arrangements for small businesses, caused by

fraudulent operators posing as legitimate insurers. Rowe

argues that there was no evidence that his own conduct

occasioned a loss of confidence in the health industry. In

our view no such evidence was required.

We think it obvious that the many businesses and

employees defrauded by Rowe must have had their confidence in

health insurers shaken as a result of their experience. It

cannot be seriously doubted that they and others made aware

of the scheme are now likely to be more wary of insurers, and

especially of legitimate but relatively unknown insurers who

cater to small businesses. The district court did not need

to hear evidence to reach this conclusion. See United States

v. Fousek, 912 F.2d 979, 981 (8th Cir. 1990) (evidence not

-11-

necessary to show that bankruptcy trustee's embezzlement of

funds caused a loss of confidence in the institution of

bankruptcy trustees).

We conclude that the vulnerability enhancement cannot

stand but that the other challenges to the sentence fail.

The sentence is vacated and the case is remanded for re-

sentencing consistent with this opinion.

It is so ordered.

-12-