No. 95-1908

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 CEFERINO CRUZ,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Richard G. Stearns, U.S. District Judge]

 

 Before

 Selya, Acting Chief Judge,*

 Bownes, Senior Circuit Judge,

 Boudin, Stahl and Lynch,

 Circuit Judges.

 

 Diana  L.  Maldonado, Federal Defender Office, on brief for
appellant.
 Donald  K.  Stern, United States Attorney, Carole  S.  Schwartz
and Kevin P. McGrath, Assistant United States Attorneys, on brief
for appellee.
 
 July 28, 1997
 

 OPINION EN BANC
 

 

*Chief Judge Torruella did not participate in this proceeding. 

 SELYA, Acting  Chief  Judge. This appeal involves a

solitary issue: the propriety vel non of the sentencing court's

decision to enhance the defendant's offense level (and, therefore,

increase the ensuing sentence) by reason of what the court deemed

to be the defendant's aggravating role in the offense of

conviction. See USSG S3B1.1(c).

 The appeal was originally argued to a panel of this

court. On April 30, 1997, the panel, by a two-to-one vote,

determined that the sentencing court had committed clear error in

its application of the role-in-the-offense guideline. Because

role-in-the-offense determinations are a frequent source of

appellate litigation, and because the panel decision seemed out of

line with our customary approach to such determinations (and,

therefore, likely to create confusion in future cases), we elected

to reconsider the matter en banc. To that end, we withdrew the

panel opinion and solicited supplemental briefs from the parties.

We now uphold the district court's application of the USSG

S3B1.1(c).

 We cull the facts from the plea colloquy, the presentence

investigation report (PSI Report), and the transcript of the

sentencing hearing. See United States v. Tejada-Beltran, 50 F.3d

105, 107 (1st Cir. 1995); United States v. Dietz, 950 F.2d 50, 51

(1st Cir. 1991). In conducting this tamisage, we are mindful that

a sentencing court may consider facts contained in the PSI Report

as reliable evidence. See United  States v. Morillo, 8 F.3d 864,

872 (1st Cir. 1993). Moreover, for sentencing purposes the court

 3

may rely upon evidence adduced at a coconspirator's trial as long

as the defendant receives notice prior to its use and has the

opportunity to challenge its reliability. See United  States v.

McCarthy, 961 F.2d 972, 979 (1st Cir. 1992); United  States v.

Berzon, 941 F.2d 8, 19 (1st Cir. 1991). Of course, this court may

also consider facts which have been established by these methods.

 On July 28, 1994, the defendant, Ceferino Cruz, greeted

Pam Mersky, an undercover Drug Enforcement Administration (DEA)

agent, as she entered La Tambora, a restaurant in Lawrence,

Massachusetts, which Cruz owned and operated. The defendant had

met Mersky one week earlier when he sold her 30.7 grams of crack

cocaine and a handgun. Alejandro Vega, later indicted as a

coconspirator, approached Mersky inside the restaurant. Mersky

told him that she wanted to buy crack cocaine. Vega initially

feigned ignorance, but Mersky persisted. When she stated that the

defendant previously had supplied her with crack, Vega engaged the

defendant in a private conversation and thereafter told Mersky to

come back in 45 minutes.

 Mersky returned to La Tambora to find Vega, but not the

defendant, present. A few minutes later Jeanette Marquez joined

 Here, as the panel acknowledged, the PSI Report furnished the
defendant the advance notice that our case law requires. At any
rate, the facts which are critical to a proper resolution of this
appeal derive directly from the PSI Report and the proceedings in
which this defendant was personally involved.

 This purchase took place at La Tambora, as did several earlier
purchases of drugs, firearms, and ammunition effectuated by a
confidential DEA informant.

 4

them. Vega introduced Marquez as the defendant's girlfriend.

Marquez (who was 14 years old and pregnant) wore a necklace

showcasing the defendant's first name. Marquez delivered the crack

cocaine to Mersky, and Mersky paid Vega for it. She then told Vega

that she wanted to purchase a gun. Vega replied that "he" didn't

realize that Mersky wanted a gun, too. In context, a factfinder

reasonably could believe that the pronoun "he" referred to Cruz.

In any event, Vega promised to contact Mersky after making further

inquiries.

 Later that afternoon Vega told Mersky that he would sell

her a gun. Mersky met Vega a few blocks away from the restaurant

and they walked to La Tambora together. Once inside, Vega

conversed privately with the defendant and thereafter handed Mersky

a bag containing a gun. The gun was frigid, suggesting that it had

just been removed from a freezer or other cold storage.

 Two subsequent events complete the picture. On August 3,

Vega consulted the defendant before providing Mersky with bullets.

On August 16, after Mersky expressed an interest in acquiring more

crack and more firepower, Vega stated that guns were available

immediately but that the crack had to be delivered. The pair

strolled to La Tambora. Vega told Mersky to go behind the food

counter. Marquez hailed the defendant. He appeared, saw Vega and

Mersky, together, walked away without engaging in any conversation,

and returned moments later with a bag containing two guns. The

defendant handed the bag to Vega who, in turn, handed it to Mersky.

She then inspected both weapons and purchased one of them.

 5

 Mersky and Vega then waited for the crack. When the

courier (Sixto Garcia) arrived, he nodded to them, but met

privately with Cruz. Mersky and Vega walked behind the food

counter; Garcia handed Cruz a plastic bag containing the crack

cocaine; Cruz gave the bag to Mersky; and Mersky, in turn, paid

Vega for it.

 Cruz was indicted and convicted on charges of conspiracy

to possess cocaine base (i.e., crack cocaine) with intent to

distribute, see 21 U.S.C. S 846, and conspiracy to sell firearms

illegally, see 18 U.S.C. S 922(a)(1)(A). The drug offense drove

the sentencing calculus. The PSI Report urged, inter alia, a two-

level upward adjustment for the defendant's leadership role. See

USSG S3B1.1(c). In calculating the guideline sentencing range

(GSR), the district court accepted this suggestion (overriding the

prosecutor's contrary recommendation) and increased the defendant's

offense level accordingly. This adjustment, together with other

computations (none of which is challenged here), yielded a GSR of

135 to 168 months. The lower court then imposed an incarcerative

sentence of 165 months. It is undisputed that, absent the role-in-

the-offense adjustment, the GSR (and presumably the sentence) would

have been less onerous.

 The determination of an individual's role in committing

an offense is necessarily fact-specific. See United  States v.

Graciani, 61 F.3d 70, 75 (1st Cir. 1995). Accordingly, appellate

 Under the applicable grouping rules, the counts of conviction
are treated as separate units. See USSG S3D1.2.

 6

review must be conducted with considerable deference. Absent an

error of law  and it is not seriously suggested that such an error

infected the sentencing process in this case the sentencing

court's determinations are to be set aside only for clear error.

See id.

 Role-in-the-offense adjustments address concerns of

relative responsibility. See USSG S3B1.1(c), comment. (backg'd).

In this vein, the guideline provides, among other things, that "if

the defendant was an organizer, leader, manager, or supervisor in

any criminal activity" involving one to three other participants,

the offense level should be increased by two levels. USSG

S3B1.1(c). Such an increase is justified if the sentencing court

supportably finds that (1) the criminal enterprise involved at

least two complicit participants (of whom the defendant may be

counted as one), and (2) the defendant, in committing the offense,

exercised control over, organized, or was otherwise responsible for

superintending the activities of, at least one of those other

persons. See  Morillo, 8 F.3d at 872;  United States v.  Savoie, 985

F.2d 612, 616 (1st Cir. 1993); United States v. Akitoye, 923 F.2d

221, 227 (1st Cir. 1991). The government bears the burden of

proving that a defendant qualifies for an upward role-in-the-

 The fact that the government had agreed not to request the
enhancement, and did not do so, does not compress the district
court's discretion. The sentencing judge has the ultimate
responsibility for the sentence and may decide to pursue matters in
the teeth of an agreement by both sides to go in a different
direction. See United  States v. Vaknin, 112 F.3d 579, 585 (1st
Cir. 1997).

 7

offense adjustment, and must carry that burden by a preponderance

of the evidence. See United  States v. Voccola, 99 F.3d 37, 44

(1st Cir. 1996); United  States v. Ortiz, 966 F.2d 707, 717 (1st

Cir. 1992).

 In this instance, we think that the evidence, viewed as

a whole, supports the district court's finding. The record

suggests that Cruz was at the center of a well-organized series of

drug and weapon sales, conducted at or through the restaurant that

he owned and operated. The evidence also suggests that Cruz

involved various individuals not only as facilitators but also as

go-betweens in an effort to limit his own apparent involvement.

This pattern is familiar in many sophisticated but illegal

transactions. See, e.g., United  States v. Catlett, 97 F.3d 565,

569-70 (D.C. Cir. 1996);  United States v.  Evans, 92 F.3d 540, 541-

42 (7th Cir.), cert. denied, 117 S. Ct. 537 (1996).

 The district judge made a specific finding that Cruz was

"the motivating principal in this drug distribution scheme" and

that he was a manager vis-a-vis both Vega and Marquez. Leaving

Vega aside, if Cruz supervised Marquez in connection with the July

28 transaction, that incident alone would provide an adequate basis

for the enhancement. See Voccola, 99 F.3d at 43-44 (explaining

that a single directed transaction is enough to confer organizer or

manager status); see also USSG S3B1.1, comment. (n.2). And the

district court's finding is sustainable in that regard. After all,

a defendant's role in the offense can be proved wholly by

circumstantial evidence and the circumstances here adequately

 8

support the inferences that the district court drew from them.

 In particular, the court's specific determinations that

Cruz, age 44, "provided the impetus for the crime," "supplied the

product," and, in the bargain, exercised dominance over his 14-

year-old paramour in regard to the July 28 transaction, while not

unarguable, pass muster under the clearly erroneous standard. Cruz

had been enmeshed in trafficking with Mersky earlier. He owned La

Tambora, the locus around which the illicit activity pirouetted.

Moreover, Cruz was probably the "he" referred to by Vega as not

knowing that Mersky wanted a gun "too." The preponderance standard

obtains during the sentencing phase of a criminal case and the odds

are certainly better than even that Marquez, 14 years old and

pregnant, was acting at someone else's direction in serving as the

transporter in a multi-party drug transaction. We think that most

people would say that, as between Cruz and Vega, the strong

likelihood is that Marquez acted at the direction of her much older

boyfriend. Surely, a reasonable trier could conclude that this

deduction is more likely true than not. Thus, the district court's

appraisal that Cruz oversaw Marquez meets the preponderance test

because of its logical force and inherent probability. 

 Despite the lessened burden of proof "fair

preponderance" rather than "beyond reasonable doubt" and the

deferential standard of review which pertain here, we recognize

 Even if Vega and Cruz jointly controlled Marquez, Cruz would
still be a manager under the guidelines.  See USSG S3B1.1, comment.
(n.4).

 9

that whether Cruz might be deemed an organizer or manager is a

close question. Yet it would not profit us to dwell on the

inferences that the defendant would have us draw from the predicate

facts. While those inferences are rational and the scenario to

which they lead is possible, the trial judge eschewed them in favor

of different, equally permissible inferences, leading to a

different scenario a scenario that depicts the defendant as a

manager. In sentencing, as elsewhere in the law, when competing

inferences plausibly can be drawn from a set of facts, the

factfinder's choice between them cannot be clearly erroneous. See

United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990).

 We need go no further. In the circumstances at bar, the

determination of the defendant's role in the offense is fact-

specific, and the facts of record reasonably can be interpreted to

attribute managerial status, more likely than not, to him. That

ends the matter: close, factbound questions are grist for the

district court's mill, not for second-guessing by appellate judges

perusing a cold record.

 Affirmed.

 Bownes, Senior  Circuit  Judge. (dissenting). I dissent

from the en banc opinion because I continue to think that the

original panel opinion was correct.

 10